UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * * *

United States of America,

        Plaintiff,

                         REPORT AND RECOMMENDATION

vs.

Gordon David Reese,

        Defendant.               Crim. 05-269 (JNE/RLE)

* * * * * * * * * * * * * * * * * * * *


I.  Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motion of the Defendant to Suppress Evidence of Search and Seizure.  A Hearing on the Motion was conducted on October 27, 2005, at which time, the Defendant appeared personally, and by Bruce M. Rivers, Esq., and the Government appeared by Steven L. Schleicher, Assistant United States Attorney.

For reasons which follow, we recommend that the Defendant's Motion to Suppress Evidence of Search and Seizure be denied.

II.  Factual Background

The Defendant is charged with one Count of conspiracy to distribute and possess with intent to distribute methamphetamine, in violation of Title 21 U.S.C. §§841(a)(1), (b)(1)(B), and 846; one Count of possession with intent to distribute methamphetamine in violation of Title 21 U.S.C. §§841(a)(1) and (b)(1)(B), and Title 18 U.S.C. §2; one Count of carrying a firearm in relation to a drug trafficking crime, in violation of Title 18 U.S.C. §§924(c)(1), and 2; one Count of being an armed career criminal in possession of a firearm, in violation of Title 18 U.S.C. §§922(g)(1) and 924(e)(1); and one Count of assault resulting in serious bodily injury, in violation of Title 18 U.S.C. §§7, 113(a)(6), 1151, and 1153(a).

The events giving rise to the conspiracy charge are alleged to have occurred from May of 2005, to July of 2005, while the events giving rise to the remainder of the charges are alleged to have occurred in July of 2005.[1]  The alleged assault is said to have occurred within the exterior boundaries of the Red Lake Indian Reservation,

---

[1] Rule 12(e), Federal Rules of Criminal Procedure, provides that "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record."  As augmented by our recitation of factual findings in our "Discussion," the essential factual findings, that are required by the Recommendations we make, are contained in this segment of our Opinion.  Of course, these factual findings are preliminary in nature, are confined solely to the Motion before the Court, and are subject to such future modification as the subsequent development of the facts and law may require.  See, United States v. Moore, 936 F.2d 287, 288-89 (6th Cir. 1991); United States v. Prieto-Villa, 910 F.2d 601, 610 (9th Cir. 1990).

and all of the charges are alleged to have occurred in this State and District.  As pertinent to the charges, and to the Motion now before us, the operative facts may be briefly summarized.

At the Hearing on the Defendant's Motion, David Gordon ("Gordon"), who is an Investigator for the Leech Lake Reservation Tribal Police Department, testified at the instance of the Government, and the Defendant testified on his own behalf.  On the morning of July 13, 2005, Gordon was patrolling the "Onigum" area, which is located several miles from Walker, Minnesota, on the Leech Lake Indian Reservation, in an unmarked Chevy Tahoe, when he received a call from a Beltrami County dispatcher,[2] who reported that a search was underway for individuals thought to have been involved in a serious assault, and a possible sexual assault.  The dispatcher reported that the suspects' vehicle was a goldish-tan colored Toyota Camry, that the occupants of the vehicle were believed to be four Native American males, and that the vehicle was believed to be in the vicinity of Onigum.

After receiving this information, Gordon proceeded to a nearby highway, in order to watch for the suspect vehicle.  He remained near the highway for

_____

[2]Gordon testified that, while the Onigum area is located in Cass County, as opposed to Beltrami County, the Leech Lake Reservation encompasses area contained in four separate counties, including Hubbard, Cass, Beltrami, and Itasca.

approximately ten (10) minutes before proceeding to County Road 13, which is otherwise known as "Onigum Road."  While Gordon was traveling westbound on County Road 13 towards Onigum, he observed a goldish tan Toyota Camry which matched the description provided by the dispatcher, traveling Eastbound , on County Road 13, towards Walker.  Gordon observed that the vehicle had only a single occupant -- the Defendant -- who appeared to Gordon to be a man of Native American decent.

Gordon turned his vehicle around, which took a matter of seconds, then increased his speed in order to catch the suspect vehicle.  Gordon testified that the vehicle remained in his sight the entire time, but that it took him approximately one mile to catch up.  As Gordon got closer to the vehicle, he observed the driver increase his speed, and take a sharp right hand turn onto a side road, without activating his turn signal.  Gordon testified that he was familiar with the side road onto which the vehicle turned, and he knew that it merely looped back to County Road 13.

Gordon turned onto the side road, and observed the vehicle accelerate away from him.  Gordon testified that he believed that the vehicle was attempting to take

evasive action,[3] and he increased his speed to over take the vehicle. Gordon then activated his lights. However, the vehicle did not stop immediately but, instead, rolled to a stop after traveling approximately three hundred (300) feet. Gordon approached the vehicle in order to conduct a traffic stop inquiry, at which time he noticed what appeared to be spots of blood on the outside of the vehicle. Gordon further testified that, when the Defendant rolled down the car window, he noticed the overwhelming smell of blood, which he recognized from his experiences as a law enforcement officer and as a hunter, emanating from the inside of the vehicle. He also observed what appeared to be blood throughout the interior of the vehicle, including on the windshield, the upholstery, and in the center console area. See <u>Government Exhibits 2, 3, and 4</u>. Gordon also observed deep scratch marks on the Defendant's face. See, <u>Government Exhibit 5</u>.

Upon Gordon's inquiry, the Defendant identified himself as Gordon Reese. Gordon recognized the Defendant's name from meetings that he had attended concerning members of criminal gangs, who travel from the Minneapolis-St. Paul area

---

[3]While Gordon was driving an unmarked Chevy Tahoe, he testified that it is common knowledge, on the Leech Lake Reservation, that investigators for the Tribal Police Department drive such vehicles.

to the Leech Lake Reservation, in order to engage in illegal activities.[4]  Gordon also discovered that the Defendant did not have a valid driver's license.

The Defendant was ordered out of his vehicle at gunpoint, and he was arrested. Upon the arrival of a Cass County Sheriff's Deputy, the Defendant was placed in the back seat of the Deputy's squad car.  A license plate check, on the Defendant's vehicle, revealed that it was registered to an individual named Elizabeth Bulhyan.  The Defendant's vehicle was then towed to an impound lot, pursuant to authorization provided by a Search Warrant, see Government Exhibit 7, and the policy of the Tribal

---

[4]At the Hearing, the Defendant objected to the testimony concerning Gordon's knowledge of the Defendant's prior criminal activity on foundation and relevance grounds.  At that time, we overruled the foundation objection, and took the relevance objection under advisement.  We now overrule the relevance objection, as we are satisfied that the Defendant's reputation for engaging in criminal activity is relevant factor in the determination of the existence of "reasonable suspicion." See, Pigg v. United States, 337 F.2d 302, 308 (8th Cir. 1964)(Ridge, J., dissenting)("A bad reputation or criminal record, although itself not reasonable grounds for an arrest, is a circumstance that may be taken into consideration along with other surrounding facts in determining whether probable cause exists for an 'arrest' and 'seizure' contemporaneously made."), citing Brinegar v. United States, 338 U.S. 160 (1949); see also, United States v. Hill, 386 F.3d 855, 858 (8th Cir. 2004)(considering the defendant's "reputation for engaging in drug activity" in determining whether probable cause was present to search his vehicle for controlled substances).  However, we recognize the limited value of such evidence, in determining whether an individual is presently engaged in criminal activity, and we limit the weight we afford to such testimony accordingly.

Police Department, for vehicles which are located on a public roadway, without a duly licensed driver.[5]

Gordon applied for, and was issued, a Search Warrant, which authorized a search of the Defendant's vehicle for evidence of an assault, firearms, and activities related to the sale and/or use of controlled substances. See, Government's Exhibit 7. A search of the vehicle was then executed. Several days later, upon Gordon's application, a second Search Warrant was issued, which authorized a forensic examination of the vehicle, at the Minnesota Bureau of Criminal Apprehension ("BCA") facilities, which are located in Bemidji, Minnesota.

There is some discrepancy between the testimony of Gordon, and the testimony of the Defendant, concerning the events which preceded the stop of the Defendant's vehicle. Notably, the Defendant testified that he was traveling from the Northern Lights Casino towards his sister's house. The Defendant testified that he did not recognize Gordon's vehicle as a law enforcement vehicle and that he was not attempting to evade Gordon. The Defendant testified that he turned from County Road 13, onto the side road, because he believed that it was a shortcut to his sister's

---

[5]Gordon also testified that it is the policy of the Tribal Police Department to conduct an inventory search of impounded vehicles, including searches of all containers present in the vehicle.

house,[6] and that, when he did so, he activated his turn signal.  He also testified that the speed limit varied along County Road 13, and that he remained compliant with the speed limit at all times.  On cross examination, the Defendant admitted that, at the time that he was stopped by Gordon, he had just woken up from being passed out in his vehicle, and that he was under the influence of alcohol.

## III.  Discussion

The Defendant seeks to suppress evidence that was obtained during the warranted searches of his vehicle, upon the assertion that the searches were the fruits of the initial traffic stop which, he alleges, violated his Fourth Amendment rights.  The Defendant also challenges the adequacy of the two Search Warrants, on their "four corners," in supporting a finding of probable cause that a search of the Defendant's vehicle would yield evidence of criminal activity.   We address each of these contentions, in turn.

A.      The Stop of the Defendant's Vehicle.

---

[6]In his rebuttal testimony, Gordon advised that he was aware that the Defendant's sister lived in the "old Agency" area, which is located approximately three-fourths of a mile to one mile southeast from where the stop occurred.  He also testified that the side road, upon which the Defendant turned, could not be considered a shortcut to the Defendant's sister's house, as it merely loops back to County Road 13.

1.    <u>Standard of Review</u>.  The Fourth Amendment provides that "the right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." <u>United States Constitution, Amendment IV</u>.  A roadside traffic stop "is well established" as a "'seizure' within the meaning of the Fourth Amendment." <u>United States v. Jones</u>, 269 F.3d 919, 924 (8th Cir. 2001), quoting <u>Delaware v. Prouse</u>, 440 U.S. 648, 653 (1979); see also, <u>United States v. Martinez-Fuerte</u>, 428 U.S. 543, 556-558 (1976); <u>United States v. Brignoni-Ponce</u>, 422 U.S. 873, 878 (1975).   An essential purpose behind the Fourth Amendment's proscriptions is to impose standards of reasonableness upon the exercise of law enforcement's discretionary powers, so as to safeguard an individual's privacy from arbitrary invasion by the Government.  See, <u>Delaware v. Prouse</u>, supra at 653-54; <u>Marshall v. Barlow's Inc.</u>, 436 U.S. 307, 312 (1978); <u>Camara v. Municipal Court</u>, 387 U.S. 523, 528 (1967).  Thus, whether or not a certain action is permissible, under the Fourth Amendment, "is judged by balancing [that action's] intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." <u>Id.</u> at 654.

In considering the extent to which a traffic stop intrudes upon an individual's Fourth Amendment interests, the Supreme Court has held that traffic stops are

investigative detentions, not custodial detentions, and therefore, the principles of Terry v. Ohio, 392 U.S. 1 (1968), govern the analysis of the reasonableness of the stop. United States v. Jones, supra at 925, citing Berkemer v. McCarty, 468 U.S. 420, 439 (1984); see also, Delaware v. Prouse, supra at 663. As a consequence, the Supreme Court has instructed that, prior to making a traffic stop, a law enforcement officer must have "probable cause to believe that a driver is violating any one of the multitude of applicable traffic and equipment regulations -- or other articulable basis amounting to reasonable suspicion that the driver is unlicensed or his vehicle unregistered." Delaware v. Prouse, at 661.

However, "[i]t is well established that a traffic violation -- however minor -- creates probable cause to stop the driver of a vehicle." United States v. Fuse, 391 F.3d 924, 927 (8th Cir. 2004), quoting United States v. Barry, 98 F.3d 373, 376 (8th Cir. 1996), quoting, in turn, United States v. Barahona, 990 F.2d 412, 416 (8th Cir. 1993). Accordingly, "a police officer who personally observes a traffic violation has probable cause to stop the vehicle and offending driver." United States v. $404,905.00 in U.S. Currency, 182 F.3d 643, 646 (8th Cir. 1999), citing Pennsylvania v. Mimms, 434 U.S. 106, 109 (1977).

"This is true even if a valid traffic stop is a pretext for other investigation." United States v. Linkous, 285 F.3d 716, 719 (8th Cir. 2002), citing Whren v. United States, 517 U.S. 806, 812-13 (1996).  Simply put, "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause * * * * [t]hat is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."  Devenpeck v. Alford, 543 U.S. 146, ---, 125 S.Ct. 588, 593-94 (2004).  As the Supreme Court has repeatedly explained, "'the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.'"  Id., quoting Whren v. United States, supra at 815; see also, United States v. Pereira-Munoz, 59 F.3d 788, 791 (8th Cir. 1995)("So long as the officer is doing nothing more than he is legally permitted and objectively authorized to do, he actual state of mind is irrelevant.").

Moreover, there is no requirement that there be a traffic violation, so long as the police officer has a reasonable suspicion that the vehicle, or its occupants, are involved in criminal activity.  See, United States v. Mora-Higuera, 269 F.3d 905, 909 (8th Cir. 2001), citing Alabama v. White, 496 U.S. 325 (1990).  "Reasonable suspicion

requires "'a particularized and objective basis" for suspecting the person stopped of criminal activity,'" which is not as demanding a standard as a showing of probable cause.  Thomas v. Dickel, 213 F.3d 1023, 1025 (8th Cir. 2000), quoting Ornelas v. United States, 517 U.S. 690 (1996), quoting in turn, United States v. Cortez, 449 U.S. 411, 417 (1981); and citing, United States v. Sokolow, 490 U.S. 1 (1989).

If an investigatory stop is not justified by reasonable suspicion, any evidence derived from the stop is inadmissible at Trial.  United States v. Wheat, 278 F.3d 722, 726 (8th Cir. 2001), citing Wong Sun v. United States, 371 U.S. 471, 484 (1963).

2.   Legal Analysis.   The Record presented clearly demonstrates that Gordon's decision to stop the Defendant's vehicle was permissible under the Fourth Amendment.  In deciding the issue, Gordon's observation of a traffic violation is an important consideration, and an unavoidable credibility determination heavily influences the result we reach.  In assessing the believability of Gordon and the Defendant, we have weighed their demeanor, and the consistency of their testimony with both common sense, and with the Record as a whole.  We are persuaded that Gordon is the more believable witness, given the Defendant's multiple felony convictions, and the Defendant's testimony that he was under the influence of alcohol

at the time of the contested stop.[7]  Accordingly, we credit Gordon's testimony that, after he turned his vehicle around, he observed the Defendant increase his rate of speed, then make a sharp right hand turn onto a side road, without activating his signal.  We further find that the Defendant increased his speed after turning onto the side road, and that he did not stop his vehicle immediately after Gordon had activated his lights but, instead, rolled to a stop after traveling approximately three hundred (300) feet.  We also credit Gordon's testimony that the road, upon which the Defendant turned, looped back to County Road 13 in such a manner that it could not be conceived as a shortcut to the "old Agency" area, where the Defendant's sister resided.

While the observation of the alleged traffic violation is, in and of itself, sufficient to justify the initial stop, we are also satisfied that Gordon had reasonable suspicion to believe that the Defendant had recently been involved in a serious assault. Specifically, the Defendant's vehicle matched the make, model, and color, of the vehicle that had been involved in a serious assault, and that the vehicle was traveling in the same general area where the alleged perpetrators of the assault were reported

---

[7]On cross examination, the Defendant admitted that an intoxilizer test, which was administered by law enforcement officers following his arrest, revealed a blood alcohol content level of .14

to have proceeded. The ethnicity and gender of the Defendant also appeared to match the description of the individuals who were believed to have participated in the assault, and the Defendant appeared to take evasive action after Gordon had begun to follow him. While the Defendant was the vehicle's sole occupant, and the Beltrami County dispatcher had reported that four (4) individuals were believed to have participated in the assault, such a factor does not weigh heavily against the reasonableness of the stop because, as Gordon testified, it was entirely possible that the other three individuals had exited the vehicle at different locations.

Moreover, once Gordon stopped the Plaintiff's vehicle, he acted well within his authority in approaching the Defendant's vehicle, in order to request identification, and to determine whether the Defendant had a valid driver's license, see, United States v. Linkous, supra at 719, ("An officer making a traffic stop does not violate the Fourth Amendment by asking the driver his destination and purpose, checking the license and registration, or requesting the driver to step over to the patrol car."), citing United States v. Poulack, 236 F.3d 932, 935 (8th Cir. 2001), cert. denied, 534 U.S. 864 (2001); United States v. Sanchez, 417 F.3d 971, 974-75 (8th Cir. 2005), as well as to engage in a limited investigation concerning the reported assault. See, United States v. Blaylock, 421 F.3d 758, 767 (8th Cir. 2005)("In performing a traffic stop, an officer

- 14 -

may conduct investigatory procedures reasonably related in scope to the circumstances that initially justified the interference"), citing United States v. McCoy, 200 F.3d 582, 584 (8th Cir. 2000).  As such, he was in a place where he had a lawful right to be, at the time when he observed what appeared to be spots of blood on the outside of the Defendant's vehicle, noticed the smell of blood from the inside of the car, and observed what appeared to be blood throughout the interior of the car.

Furthermore, Gordon's observations of blood throughout the Defendant's vehicle, combined with his knowledge that the vehicle being driven by the Defendant matched the description of a vehicle that was reported to have recently been involved in an assault, provided an objective justification for the continued detention of the Defendant, and his eventual arrest.  See, United States v. Lester, 647 F.2d 869, 873 (8th Cir. 1981)(finding that  officers' observation of blood and hair on the clothing of an individual identified as a possible participant in an assault provided probable cause to arrest the individual for the assault).

In sum, after considering the totality of the circumstances, we are satisfied that the stop of the Defendant's vehicle, as well as the ensuing investigation, were adequately supported by both probable cause to believe that the Defendant had committed a traffic violation, and an objective and reasonable suspicion that the

Defendant had recently participated in a serious assault.  Accordingly, find no constitutional infirmity in the traffic stop, we find no basis for the suppression of evidence that was obtained during the warranted searches of the Defendant's vehicle as the fruits of an unlawful seizure.

B.      The Sufficiency of the Search Warrants.

        1.      Standard of Review.  In the issuance of a Search Warrant, the Fourth Amendment dictates that an impartial, neutral, and detached Judicial Officer, will assess the underlying factual circumstances so as to ascertain whether probable cause exists to conduct a search, or to seize incriminating evidence, the instrumentalities or fruits of a crime, or contraband.  Warden v. Hayden, 387 U.S. 294 (1967); United States v. Johnson, 64 F.3d 1120, 1126 (8th Cir. 1995), cert. denied, 516 U.S. 1139 (1996).  In order to find probable cause, it must be demonstrated that, in light of all the circumstances set forth in the supporting Affidavit, there is a fair probability that contraband, or evidence of a crime, will be found in a particular, designated place. United States v. Gladney, 48 F.3d 309, 313 (8th Cir. 1995); United States v. Tagbering, 985 F.2d 946, 949 (8th Cir. 1993).  For these purposes, probable cause is "a fluid concept, turning on the assessment of probabilities in particular factual contexts, not

readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983); see also, Ornelas v. United States, supra at 695.

"Search warrant '[a]pplications and affidavits should be read with common sense and not in a grudging hyper technical fashion.'" United States v. Ryan, 293 F.3d 1059, 1061 (8th Cir. 2002), quoting United States v. Goodman, 165 F.3d 610, 613 (8th Cir. 1999), cert. denied, 527 U.S. 1030 (1999). In conducting such an examination, the Court should review the Affidavits as a whole, and not on a paragraph-by-paragraph basis. United States v. Anderson, 933 F.2d 612, 614 (8th Cir. 1991); Technical Ordnance, Inc. v. United States, 244 F.3d 641, 649 (8th Cir. 2001), cert. denied, 534 U.S. 1084 (2002). Moreover, the reviewing Court must not engage in a de novo review but, rather, should accord great deference to the decision of the Judicial Officer who issued the Warrant. United States v. Maxim, 55 F.3d 394, 397 (8th Cir. 1995), cert. denied, 516 U.S. 903 (1995); United States v. Curry, 911 F.2d 72, 75 (8th Cir. 1990), cert. denied, 498 U.S. 1094 (1991). This mandated deference to the determination of the issuing Judicial Officer is consistent with the Fourth Amendment's sound preference for searches that are conducted pursuant to Warrants. Illinois v. Gates, supra at 236.

2.    <u>Legal Analysis</u>.  The Defendant has asked us to review each of the two Search Warrants, which authorized the search of his vehicle, in order to determine whether those Warrants were supported by probable cause, or contained any other fatal defects.  The first Search Warrant was issued, and executed, on July 13, 2005, and authorized a search of the Defendant's vehicle for evidence indicative of an assault, as well as firearms and narcotics related offenses, and documentation to establish the ownership of the vehicle, and evidence of membership in a criminal gang.  <u>Government Exhibit 7</u>.  The Search Warrant also authorized Gordon to photograph such evidence, and to tow the vehicle to a secure area, in order to conduct the search.  The second Search Warrant was issued on July 18, 2005, and authorized a forensic search of the Defendant's vehicle by the BCA for much of the same evidence that was identified in the first Search Warrant.

In support of each of the Search Warrant Applications, Gordon submitted Affidavits which detailed the events which caused him to suspect that evidence of criminal activity was contained within the Defendant's vehicle.  In support of the first Warrant, Gordon attested to the information that he had received from the Beltrami County dispatcher, and his observance of the Defendant's vehicle on County Road 13, near Onigum.  Gordon also detailed the stop of the Defendant's vehicle, including the

- 18 -

Defendant's failure to activate his turn signal, and his observation of what appeared to be blood on the exterior, as well as throughout the interior of the car.  Gordon averred that through his training and experience as a law enforcement officer, the presence of blood, especially in the quantity that was observed, is indicative of a serious assault.

Gordon also attested that he knew that the Defendant, who was the sole occupant of the vehicle, was a high ranking member of the Native Mob criminal gang, and that he had been convicted of a number of serious assaults and firearms-related offenses.  He also related that, through conversations with other law enforcement officers who are knowledgeable about the Native Mob, the Defendant was the second in charge of the Native Mob, and that he had a history of drug dealing, assaults, and suspected firearms violations.  Gordon further averred that, through conversations with a Beltrami County Deputy Sheriff, he learned that the victim of the alleged assault had reported that the vehicle contained drugs, as well as at least one firearm.

The Affidavit in support of the second Search Warrant contained substantially the same averments.  However, in his second Affidavit, Gordon disclosed that the execution of the first Search Warrant resulted in the discovery of a loaded .45 caliber handgun, two digital scales, a box of sandwich baggies, which contained both baggies

and a scissors, and documents with the names of several individuals on them.  Gordon also averred that, on July 14, 2005, an Investigator brought the alleged victim of the assault to the vehicle, in order to allow her to retrieve some personal items.  The alleged victim pointed out a pair of shoes that were contained in the vehicle, and directed the Investigator's attention to a baggie that was located in the toe of one shoe. The Investigator contacted Gordon and another Investigator for the Tribal Police Department, who determined that the baggie contained approximately twenty-five (25) grams of a substance that field tested positive for methamphetamine.

Lastly, Gordon averred that statements taken from the Defendant, and the alleged victim, differed as to whether the alleged assault occurred within, or outside of the Defendant's vehicle, and that, through consultation with a forensic expert at the BCA, he learned that a forensic examination of the vehicle could resolve those discrepancies through the examination physical evidence.

On these showings, we find that there was probable cause to support the issuance of each of the Search Warrants.   Specifically, we find that similarities between the vehicle that was involved in the alleged assault, and that which was occupied by the Defendant, the location of the vehicle in the Onigum area, as well as the presence of large quantities of blood throughout the interior and exterior of the

vehicle, were more than adequate to believe that evidence pertaining to the assault would be discovered inside of the vehicle.  Moreover, as to the first Warrant, the Defendant's status, as a high ranking member of a criminal gang, his history of narcotics and firearms activity, and a report from the victim of the alleged assault, that drugs and firearms were being concealed within the vehicle, were sufficient to justify the issuing Judicial Officer's finding of probable cause that evidence of firearms and controlled substance related crimes would be discovered in a search of the Defendant's vehicle.

As to the second Search Warrant, the probable cause determination of the issuing Judicial Officer is further supported by Gordon's averments that a firearm, a quantity of methamphetamine, and items used in the distribution of controlled substances, were discovered during the execution of the initial Search Warrant. Furthermore, given Gordon's averments, concerning the alleged assault, the discrepancies between the statements provided by the alleged victim, and the Defendant, and the opinion of an expert forensic investigator, that a forensic examination of the vehicle could resolve those discrepancies, we find no error in the determination of the issuing Judicial Officer that sufficient probable cause was present

to believe that a forensic examination of the vehicle would yield evidence of criminal activity.

Therefore, having found no constitutional infirmity in the stop and seizure of the Defendant's vehicle, and finding further, that each of the challenged Search Warrants were supported by probable cause, and were not otherwise fatally defective, we recommend that the Defendant's Motion to Suppress Evidence Obtained by Search and Seizure be denied.[8]

---

[8]Even if the information in the Search Warrant were insufficient to establish probable cause, we would be compelled, by the law of this Circuit, to find that the officers' reliance upon the Search Warrant was reasonable, because the Warrant "was not so facially lacking in probable cause as to preclude the executing officers' good faith reliance thereon." United States v. McNeil, 184 F.3d 770, 775 (8th Cir. 1999), citing United States v. Leon, 468 U.S. 897, 922-23 (1984).   Here, "[n]o evidence suggests that the issuing Judge 'wholly abandoned his judicial role,' especially in light of the previously stated reasons supporting our probable cause determination." United States v. Terry, 305 F.3d 818, 823 (8th Cir. 2002)(finding Leon good faith exception applicable as to a Search Warrant issued to seize alleged child pornography), citing United States v. Leon, supra at 923.   Accordingly, even if probable cause were lacking, we would still recommend that the Defendant's Motion to Suppress be denied.

Moreover, it appears from the Record that at least some limited search of the Defendant's vehicle would have been justified, even in the absence of a valid Search Warrant.   See, Colorado v. Bertine, 479 U.S. 367, 371 (1987)("[I]nventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment."); United States v. Ross, 456 U.S. 798, 825 (1982)("[A] warrantless search of an automobile stopped by police officers who had probable cause to believe that the vehicle contained contraband was not unreasonable within the meaning of the

NOW, THEREFORE, It is --

RECOMMENDED:

That the Defendant's Motion to Suppress Evidence of Search and Seizure [Docket No. 51] be denied.

Dated:  November 16, 2005          *s/Raymond L. Erickson*
                                   Raymond L. Erickson
                                   CHIEF U.S. MAGISTRATE JUDGE

### NOTICE

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than December 5, 2005**, a writing which specifically identifies those

---

Fourth Amendment."), citing <u>Carroll v. United States</u>, 267 U.S. 132 (1925); <u>New York v. Belton</u>, 453 U.S. 454, 460 (1981)(finding that a search incident to the arrest of a vehicle's occupant may include the passenger compartment of the automobile). However, since we conclude that the Search Warrants were adequately supported by probable cause, and that, even if probable cause were lacking, suppression would still be improper under the good faith exception, we need not determine whether the two warranted searches of the Defendant's vehicle would, nonetheless, have been constitutional under the recognized exceptions to the Warrant requirement of the Fourth Amendment for automobile searches, searches incident to arrest, and inventory searches.

- 23 -

portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than December 5, 2005**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.