UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | Case No. 05-cv-0269 (1) (JNE) |
| Plaintiff, | |
| | **ORDER** |
| v. | |
| Gordon David Reese, | |
| Defendant. | |

---

This matter comes before the Court on Defendant Gordon David Reese's motion for a reduction in his term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), commonly known as compassionate release. (Dkt. 146.) For the reasons addressed below, the Court denies the motion.

## BACKGROUND

Defendant Gordon David Reese was indicted in August 2005 for several drug offenses and possession of a firearm. After a jury trial, Reese was convicted on February 24, 2006, of conspiring to distribute and possess with intent to distribute methamphetamine, possession with intent to distribute methamphetamine, possession of a firearm in furtherance of a drug trafficking crime, being an armed career criminal in possession of a firearm, and assault resulting in serious bodily injury.

At sentencing on June 23, 2006, the Court determined that Reese was both an armed career criminal and a career offender based on his prior convictions, which included a 1996 Minnesota conviction for possessing a short-barreled shotgun and three 1999 Minnesota

second-degree assault convictions. The three 1999 convictions stemmed from two separate incidents in July and September of that year. Reese was sentenced for the July and September incidents on the same date, but his convictions received separate criminal history points because there was an intervening arrest.

As a career offender who did not receive a reduction for acceptance of responsibility, Reese's Guidelines range was 360 months to life in prison. The Court imposed a 363-month prison term. The Eighth Circuit affirmed Reese's sentence on appeal. *United States v. Reese*, 240 Fed. App'x 168 (8th Cir. 2007) (unpublished per curiam).

In 2016, Reese moved for and received a sentence reduction under *Johnson v. United States*, 576 U.S. 591 (2015). The Court reduced Reese's sentence for Count 4 from 303 to 120 months but denied his challenge to his career offender status, finding that Minnesota second-degree assault is a crime of violence and that he had the requisite number of prior felony convictions to be properly sentenced as a career offender. Reese continues to serve concurrent 303-month sentences on Counts 1 and 2, to be followed by a 60-month sentence on Count 3.

Reese is currently incarcerated at FCI Sandstone with a projected release date of September 20, 2031. While in custody, Reese incurred numerous disciplinary sanctions, including for assault and possession of a dangerous weapon.

## ANALYSIS

I.      **Applicability of U.S.S.G. § 1B1.13(b)(6)**

The first issue the Court must address is whether U.S.S.G. § 1B1.13(b)(6), the policy statement under which Reese seeks compassionate release, is a proper basis for his motion. Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a defendant's term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." In November 2023, the Sentencing Commission promulgated U.S.S.G. § 1B1.13(b)(6), which allows defendants to move for compassionate release if they have served at least 10 years of an "unusually long sentence" and a change in the law occurred that "would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed."

Reese argues that U.S.S.G. § 1B1.13(b)(6) is within the Sentencing Commission's authority, as Congress intended for the Commission to promulgate policy statements regarding compassionate release. However, the United States contends that the Sentencing Commission's decision to permit intervening changes in law to establish extraordinary and compelling reasons for a sentence reduction exceeds the bounds of its delegated authority and is therefore invalid.

The Court notes that there is an ongoing debate among the circuit courts regarding the validity and application of U.S.S.G. § 1B1.13(b)(6). Some courts have raised concerns that allowing non-retroactive changes in sentencing laws to justify compassionate release could undermine the finality of sentences and the limitations on post-conviction relief

3

established by Congress.  *See United States v. Crandall*, 25 F.4th 582, 585-86 (8th Cir. 2022).

However, given the complex legal questions surrounding the validity of U.S.S.G. § 1B1.13(b)(6) and the fact that Reese's motion can be resolved on other grounds, the Court need not decide this issue.  Instead, the Court will assume, without deciding, that U.S.S.G. § 1B1.13(b)(6) is a valid policy statement and will proceed to analyze Reese's motion under the framework it provides.

Even under this assumption, as discussed in the following sections, the Court finds that Reese has not demonstrated the requisite extraordinary and compelling reasons for a sentence reduction based on the specific facts and circumstances of his case.  Therefore, the Court's ultimate recommendation to deny Reese's motion does not depend on a definitive ruling on the validity of U.S.S.G. § 1B1.13(b)(6).

**II.     Consolidation of Prior Offenses**

The next issue before the Court is whether Reese's July and September 1999 offenses should be considered a single sentence due to formal consolidation by court order and plea agreement, as Reese argues, or whether the offenses are not considered a single sentence due to an intervening arrest, as the United States contends.

To determine whether prior sentences should be treated as a single sentence, the Court must look to the Guidelines and applicable case law.  Under U.S.S.G. § 4A1.2(a)(2), prior sentences are always counted separately if the offenses were separated by an intervening arrest.  This provision has remained unchanged since Reese's sentencing.  The Guidelines also provide that prior sentences are considered a single sentence if they

4

resulted from offenses that were named in the same charging instrument or were imposed on the same day. *See id.*

Here, Reese asserts that his July and September 1999 offenses were formally consolidated by a court order and plea agreement, and therefore should be treated as a single sentence. In support of this argument, Reese points to an allegedly newly discovered plea hearing transcript which he claims demonstrates that the state prosecutor and defense counsel agreed to a plea deal that would result in his July and September charges running concurrently.

While the Court acknowledges that Reese's offenses were sentenced on the same day, which could support a finding of consolidation under the Guidelines, the Court must also consider the fact that the offenses were separated by an intervening arrest. The PSR indicates that Reese's July and September 1999 offenses were separated by an intervening arrest, and therefore the offenses were not considered related.

The United States argues that the intervening arrest is dispositive and precludes a finding of consolidation, regardless of the other factors cited by Reese. The United States's position finds support in the plain language of the Guidelines and in case law interpreting Section 4A1.2(a)(2). *See United States v. Turner*, 786 F. App'x 68, 70 (8th Cir. 2019) (holding that prior sentences are always counted separately if the offenses were separated by an intervening arrest, even if the sentences were imposed on the same day).

While Reese presents evidence that could support a finding of consolidation, such as the plea hearing transcript and the fact that his sentences were imposed on the same day, the Court cannot ignore the clear language of the Guidelines and the fact of the intervening

arrest. The Guidelines unambiguously state that prior sentences are always counted separately if the offenses were separated by an intervening arrest, and the Eighth Circuit has consistently applied this rule. *See id*.

Moreover, the Court notes that the Guidelines' treatment of intervening arrests serves important policy goals, such as deterring criminal conduct and ensuring that repeat offenders receive appropriate sentences. *See United States v. Cashwell*, 66 F. App'x 441, 441-42 (3d Cir. 2003) (noting the rationale behind the Guidelines' treatment of intervening arrests).

Therefore, based on the plain language of the Guidelines, the applicable case law, and the policy considerations underlying the treatment of intervening arrests, the Court finds that Reese's July and September 1999 offenses are not considered a single sentence.

**III.    Impact of *King v. United States* and Amendment 795**

The Court must now address the parties' arguments regarding the impact of *King v. United States*, 595 F.3d 844 (8th Cir. 2010), and Amendment 795 on Reese's career offender status.

In *King*, the Eighth Circuit held that when two or more prior sentences are treated as a single sentence under the Guidelines, all the criminal history points attributable to the single sentence are assigned to the longest sentence, even if that offense is not a qualifying predicate for career offender status. *Id.* at 848-49. Reese argues that under *King*, his July 1999 assault convictions cannot qualify as predicate offenses for career offender purposes because the criminal history points must be assigned to the longer, non-qualifying firearms

6

offense.  Reese maintains that *King* remains binding precedent in the Eighth Circuit, notwithstanding Amendment 795 or out-of-circuit decisions.

The United States, however, contends that Amendment 795, promulgated in November 2015, effectively overruled *King* and clarified that an individual prior sentence may serve as a predicate offense if it independently would have received criminal history points.  The United States argues that under Amendment 795, Reese's July 1999 assault convictions would qualify as career offender predicates because they would have received criminal history points independently of the firearms offense.

To resolve this issue, the Court must first examine the rationale behind the *King* decision and the circuit split it created.  In *King*, the Eighth Circuit focused on the "grouping rule" in U.S.S.G. § 4A1.2(a)(2), which provides that for groups of prior sentences that are treated as a single sentence, the court should "[u]se the longest sentence of imprisonment if concurrent sentences were imposed."  *Id.* at 849.  The court found it ambiguous whether King's prior resisting arrest convictions properly received criminal history points under this rule, since they were grouped with longer concurrent sentences for non-predicate offenses.  *Id.* at 850.  Applying the rule of lenity, the court concluded the resisting arrest priors should not count as career offender predicates.  *Id.* at 849-51.  This interpretation of the grouping rule conflicted with other circuits that had held each individual prior sentence within a group may qualify as a career offender predicate if it would independently receive criminal history points.

However, the *King* court's interpretation of Section 4A1.2(a)(2) conflicted with the Eleventh Circuit's earlier decision in *United States v. Cornog*, 945 F.2d 1504, 1506 n.3

7

(11th Cir. 1991), and the Sixth Circuit's later decision in *United States v. Williams*, 753 F.3d 626, 639 (6th Cir. 2014). In *Cornog*, the Eleventh Circuit held that courts should not "ignore a conviction for a violent felony just because it happened to be coupled with a nonviolent felony conviction having a longer sentence." 945 F.2d at 1506 n.3. Similarly, in *Williams*, the Sixth Circuit concluded that defendants cannot "evade career offender status because [they] committed more crimes." 753 F.3d at 639 (emphasis in original).

The Sentencing Commission resolved this circuit split by enacting Amendment 795, which adopted the approach taken in *Williams* and *Cornog*. *See* U.S.S.G. App. C, Amend. 795, Reason for Amendment. Amendment 795 clarified that "for purposes of determining predicate offenses, a prior sentence included in the single sentence should be treated as if it received criminal history points, if it independently would have received criminal history points." U.S.S.G. § 4A1.2, comment. (n.3).

The Court finds that the reasoning of *Williams* and *Cornog*, as endorsed by the Sentencing Commission in Amendment 795, to be more persuasive than the approach taken in *King*. The *King* court's interpretation of Section 4A1.2(a)(2) placed undue emphasis on the singular phrasing of "the sentence" and failed to consider the broader context and purpose of the career offender guideline. Allowing defendants to avoid career offender status simply because they committed additional non-qualifying offenses would undermine this purpose.

Moreover, the language of Amendment 795 is clear and unambiguous. The amendment explicitly states that a prior sentence included in a single sentence should be treated as if it received criminal history points if it independently would have received such

points.  U.S.S.G. § 4A1.2, comment. (n.3).  This language leaves no room for the interpretation advanced by Reese.

While the Court acknowledges that the Eighth Circuit has not formally overruled *King*, the Court finds that Amendment 795 has effectively abrogated the holding of that case.  The Sentencing Commission's decision to amend the Guidelines in response to the circuit split created by *King* suggests that the Commission intended to reject the approach taken in that case.  Furthermore, the Eighth Circuit itself has questioned the continued validity of *King* in light of Amendment 795 and the reasoning of *Williams*.  *See United States v. Donnell*, 765 F.3d 817, 820 (8th Cir. 2014); *see United States v. Ellis*, 815 F.3d 419, 423 (8th Cir. 2016).

Applying Amendment 795 to the facts of Reese's case, the Court finds that Reese's July 1999 assault convictions would qualify as career offender predicates because they would have received criminal history points independently of the firearms offense.  The assault convictions were separate and distinct from the firearms offense and would have been assigned criminal history points under U.S.S.G. § 4A1.1(a) regardless of the length of the sentence imposed for the firearms offense.

In conclusion, based on the plain language of Amendment 795, the persuasive reasoning of *Williams* and *Cornog*, and the Eighth Circuit's own questioning of *King*'s continued validity, the Court finds that Amendment 795 has effectively overruled *King* and that, under the current Guidelines, Reese's July 1999 assault convictions would qualify as career offender predicates.

**IV.    Rehabilitation and Other Factors Under 18 U.S.C. § 3582(c)(1)(A)**

The Court must now consider Reese's argument that his rehabilitation, while not the sole basis for release, should be considered in combination with other factors under 18 U.S.C. § 3582(c)(1)(A), and the United States's counterargument that rehabilitation alone is not an extraordinary and compelling reason for release.

Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a defendant's term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction", after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable. The statute does not define "extraordinary and compelling reasons," but instead directs the Sentencing Commission to promulgate "general policy statements regarding the sentencing modification provisions" that describe "what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t).

In November 2023, the Sentencing Commission amended U.S.S.G. § 1B1.13 to clarify that while "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason" for release, it "may be considered in combination with other circumstances." U.S.S.G. § 1B1.13(d). This amendment reflects the Commission's recognition that rehabilitation, while not sufficient on its own, may be relevant to the overall assessment of whether extraordinary and compelling reasons for release exist.

Reese argues that his rehabilitation, including his completion of numerous programs and his clear conduct in recent years, should be considered in combination with the other factors he has raised, such as the length of his sentence and the alleged changes in law that would result in a lower sentence today. Reese emphasizes that he has taken steps to

improve himself and prepare for reentry into society, and he contends that his rehabilitative efforts, when viewed in the context of his other arguments, support a finding of extraordinary and compelling reasons for release.

The United States, on the other hand, contends that Reese's rehabilitation alone cannot justify compassionate release, as Congress has explicitly stated that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for a sentence reduction. The United States argues that this statutory directive forecloses Reese's argument that his rehabilitation, even when considered in combination with other factors, can support a finding of extraordinary and compelling reasons. Additionally, the United States points to Reese's disciplinary record, which includes incidents of assault and possession of a dangerous weapon, as evidence that his rehabilitation has been incomplete and that he may still pose a danger to the community.

In evaluating Reese's argument, the Court must begin by acknowledging the progress he has made towards rehabilitation while incarcerated. The record shows that Reese has completed numerous educational and vocational programs and taken some steps to address the underlying issues that contributed to his criminal behavior. These efforts demonstrate Reese's commitment to personal growth and his desire to lead a law-abiding life upon release.

However, the Court must also give due weight to Congress's clear statement that rehabilitation alone cannot serve as an extraordinary and compelling reason for a sentence reduction. *See* 28 U.S.C. § 994(t). This statutory directive, which is reinforced by the Sentencing Commission's recent amendment to U.S.S.G. § 1B1.13, reflects a legislative

11

policy judgment that rehabilitation, while laudable, is not sufficient on its own to justify the extraordinary remedy of compassionate release.

After carefully considering Reese's arguments and the specific facts of his case, the Court concludes that his rehabilitation, even when combined with the other factors raised, does not constitute extraordinary and compelling reasons for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). While Reese's rehabilitative efforts are commendable, they are not exceptional enough to warrant the extraordinary remedy of compassionate release, particularly in light of the serious nature of his prior disciplinary infractions and the unpersuasive arguments regarding the length of his sentence and alleged changes in law. The Court encourages Reese to continue on his path of personal growth but finds that his case does not present the rare and compelling circumstances necessary for compassionate release.

## V.   18 U.S.C. § 3553(a) Factors

Having concluded that Reese has not demonstrated extraordinary and compelling reasons for a sentence reduction, the Court need not proceed to an analysis of the 18 U.S.C. § 3553(a) factors. *See United States v. Loggins*, 966 F.3d 891, 892 (8th Cir. 2020) (noting that a district court may deny a compassionate release motion based on a failure to show extraordinary and compelling reasons, without addressing the Section 3553(a) factors). Nevertheless, for the sake of completeness, the Court will briefly address the parties' arguments regarding the Section 3553(a) factors.

Under 18 U.S.C. § 3582(c)(1)(A), if a court finds that extraordinary and compelling reasons warrant a sentence reduction, it must then consider the factors set forth in 18 U.S.C.

12

§ 3553(a) to determine whether a reduction is appropriate. The Section 3553(a) factors include, among others, the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense and provide just punishment, the need to protect the public from further crimes of the defendant, and the need to avoid unwarranted sentence disparities. 18 U.S.C. § 3553(a).

Reese argues that the Section 3553(a) factors support a sentence reduction in his case, emphasizing his rehabilitation, his remorse for his actions, and his plans for reentry into society. He contends that he has served a significant portion of his sentence and that a reduction would not undermine the purposes of sentencing, given his demonstrated progress and the support he has from his community.

The United States, on the other hand, argues that the Section 3553(a) factors weigh against a sentence reduction, given the serious nature of Reese's offenses and his extensive criminal history. The United States points to Reese's leadership role in a notorious gang, his involvement in drug trafficking and violence, and his possession of firearms in furtherance of his criminal activities. The United States also highlights Reese's disciplinary record in prison, which includes incidents of assault and possession of a dangerous weapon, as evidence that he may still pose a danger to the community.

In weighing the Section 3553(a) factors, the Court must consider both the aggravating and mitigating aspects of Reese's case. On the aggravating side, the Court cannot overlook the serious nature of Reese's offenses, which included drug trafficking, firearms possession, and violent conduct. Reese's criminal history is also significant,

13

reflecting a pattern of offenses involving weapons and violence. These factors weigh in favor of a sentence that reflects the seriousness of the offenses, provides just punishment, and protects the public from further crimes.

On the mitigating side, the Court acknowledges Reese's efforts at rehabilitation, as discussed in the preceding section. The Court also recognizes Reese's expression of remorse and his plans for reentry into society, which suggest that he has reflected on his past conduct and is motivated to lead a law-abiding life upon release.

However, the Court must balance these mitigating factors against the aggravating circumstances of Reese's case and the purposes of sentencing. While Reese's rehabilitative efforts are commendable, they do not erase the serious nature of his offenses or the harm caused by his criminal conduct. Moreover, Reese's disciplinary record in prison, which includes incidents of assault and possession of a dangerous weapon, raises concerns about his potential risk to public safety if released.

After carefully weighing the Section 3553(a) factors, the Court concludes that they do not support a sentence reduction in Reese's case. The seriousness of his offenses, his extensive criminal history, and the need to protect the public from further crimes outweigh his rehabilitative efforts and other mitigating factors. A sentence reduction would not adequately reflect the statutory purposes of sentencing or avoid unwarranted sentencing disparities. Therefore, even if Reese had demonstrated extraordinary and compelling reasons for a sentence reduction (which the Court has found he has not), the Court would still deny his motion based on the Section 3553(a) factors.

**VI.     Amendment 821 and Eligibility for Sentence Reduction**

In addition to his arguments for compassionate release under 18 U.S.C. § 3582(c)(1)(A), Reese's case also involves the question of his eligibility for a sentence reduction under Amendment 821 to the U.S. Sentencing Guidelines.

Amendment 821, which became effective on November 1, 2023, modified the calculation of criminal history points under U.S.S.G. § 4A1.1 and introduced a new "status" point under Section 4A1.1(e) (formerly Section 4A1.1(d)). The amendment also added a "zero-point offender" provision under Section 4C1.1.

The U.S. Probation Office submitted a memorandum analyzing Reese's eligibility for a sentence reduction under Amendment 821. The memorandum concludes that Reese is ineligible for a reduction because, although the amendment lowered his criminal history score from 12 to 10 points, it did not have the effect of lowering his guideline range, which remains 360 months to life imprisonment based on his career offender status.

The Federal Defender's Office also submitted a letter indicating that they have reviewed Reese's case with respect to Amendment 821 and do not intend to file any materials on his behalf regarding this amendment.

Reese does not appear to have made any specific arguments regarding his eligibility for a sentence reduction under Amendment 821, as his compassionate release motion and subsequent filings focus primarily on the factors discussed in the preceding sections.

In evaluating Reese's eligibility for a sentence reduction under Amendment 821, the Court must apply the two-step inquiry set forth in *Dillon v. United States*, 560 U.S. 817 (2010). First, the Court must determine whether Reese is eligible for a sentence modification by calculating the amended guideline range that would have been applicable

if Amendment 821 had been in effect at the time of his original sentencing. *See* U.S.S.G. § 1B1.10(b)(1). If the amendment lowers Reese's applicable guideline range, the Court must then consider any applicable Section 3553(a) factors and determine whether, in its discretion, a reduction is warranted in whole or in part under the particular circumstances of the case. *See Dillon*, 560 U.S. at 827.

Here, although Amendment 821 reduces Reese's criminal history score from 12 to 10 points, it does not have the effect of lowering his applicable guideline range, which remains 360 months to life imprisonment based on his career offender status. Under U.S.S.G. § 1B1.10(a)(2)(B), a reduction in a defendant's term of imprisonment is not authorized under 18 U.S.C. § 3582(c)(2) if the amendment does not have the effect of lowering the defendant's applicable guideline range.

The Court adopts the U.S. Probation Office's conclusion that Reese is ineligible for a sentence reduction under Amendment 821. The Court notes that neither Reese nor the Federal Defender's Office has presented any arguments challenging this conclusion or suggesting that Amendment 821 would have the effect of lowering Reese's applicable guideline range.

Moreover, even if Reese were eligible for a sentence reduction under Amendment 821, the Court would still need to consider the Section 3553(a) factors, as discussed in the preceding section, to determine whether a reduction is warranted in his case. *See Dillon*, 560 U.S. at 827. For the reasons stated in the Court's analysis of the Section 3553(a) factors, the Court would conclude that a sentence reduction is not warranted based on the

specific circumstances of Reese's case, including the nature and severity of his offenses, his criminal history, and the need to protect the public from further crimes.

In sum, the Court concludes that Reese is ineligible for a sentence reduction under Amendment 821 because the amendment does not have the effect of lowering his applicable guideline range, which remains 360 months to life imprisonment based on his career offender status. Even if Reese were eligible, the Court would still deny a reduction based on a weighing of the relevant Section 3553(a) factors.

### VII. Appointment of Counsel

In his compassionate release motion and subsequent filings, Reese requests the appointment of counsel to assist him in presenting his arguments and navigating the legal complexities of his case.

The Eighth Circuit has held that there is no constitutional or statutory right to counsel in proceedings under 18 U.S.C. § 3582(c). *See United States v. Harris*, 568 F.3d 666, 669 (8th Cir. 2009) (holding that the constitutional right to counsel does not extend to Section 3582(c) proceedings). However, a district court has the discretion to appoint counsel in a Section 3582(c) proceeding if it determines that the interests of justice so require. *See United States v. Brown*, 565 F.3d 1093, 1094 (8th Cir. 2009); *Cf.* 18 U.S.C. § 3006A(a)(2).

In determining whether the interests of justice require the appointment of counsel, courts may consider factors such as the complexity of the legal and factual issues involved, the defendant's ability to investigate and present his claims, and the potential merit of the defendant's arguments. *See United States v. Davis*, No. 94-00032-01-CR-RK, 2020 U.S.

Dist. LEXIS 238506, at *4 (W.D. Mo. Dec. 17, 2020); *see United States v. Webb*, 565 F.3d 789, 795 n.4 (11th Cir. 2009).

Here, Reese argues that the appointment of counsel is necessary given the legal complexities of his case, particularly with respect to the issues of the validity of U.S.S.G. § 1B1.13(b)(6), the impact of the *King* decision and Amendment 795, and the consolidation of his prior offenses. He contends that the assistance of counsel would ensure that his arguments are thoroughly researched and effectively presented to the Court.

The United States does not appear to have taken a position on Reese's request for the appointment of counsel, as its response focuses primarily on the substantive issues raised in Reese's compassionate release motion.

In considering Reese's request, the Court acknowledges that the legal issues involved in his case, particularly those related to the career offender guideline and the impact of intervening changes in the law, are complex and require careful analysis. However, the Court also notes that Reese has demonstrated an ability to research and present his arguments, as evidenced by his pro se filings.

Moreover, as discussed in the preceding sections, the Court has concluded that Reese's arguments for compassionate release and a sentence reduction under Amendment 821 are ultimately unpersuasive, even after thorough consideration of the legal and factual issues involved.

Given these circumstances, the Court concludes that the interests of justice do not require the appointment of counsel in this case. While the legal issues involved are complex, Reese has demonstrated an ability to investigate and present his claims, and the

Court has been able to thoroughly consider and evaluate his arguments based on his pro se filings. Moreover, given the Court's conclusion that Reese's arguments for compassionate release and a sentence reduction are ultimately unpersuasive, the appointment of counsel is unlikely to change the outcome of the Court's analysis.

Therefore, in the exercise of its discretion, the Court denies Reese's request for the appointment of counsel. The Court finds that the interests of justice do not require the appointment of counsel in this case, given Reese's demonstrated ability to present his claims and the Court's thorough consideration of his arguments.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Gordon David Reese's motion for a reduction in his term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), (Dkt. 146), is **DENIED**.

Dated:  May 31, 2024                              s/Joan N. Ericksen
                                                  JOAN N. ERICKSEN
                                                  United States District Judge